**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CELENA SUE SHELLENBERGER,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | : | CIVIL NO.: 1:25-cv-01596<br><br>(Magistrate Judge Schwab) |

**<u>MEMORANDUM OPINION</u>**

## I. Introduction.

In this social security action, Plaintiff Celena Sue Shellenberger seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, we will affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 9-1 to 9-10.*[1] In 2023, Shellenberger filed an application for disability insurance benefits and an application for supplemental security income, alleging that she has been disabled since July 20, 2020. *See Admin. Tr.* at 192–207. After the Commissioner administratively denied her claims, *id*. at 66–115, Shellenberger requested an administrative hearing, *id.* at 136–37. On February 19, 2025, Shellenberger—who was represented by counsel—as well as a vocational expert testified at a hearing before Administrative Law Judge Richard Guida (the "ALJ"). *Id*. at 40–60.

On March 25, 2025, the ALJ denied Shellenberger's claims for benefits. *Id*. at 14–38. Shellenberger appealed the ALJ's decision to the Appeals Council, which denied her request for review. *Id*. at 1–6. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In August 2025, Shellenberger, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying her claims. *See Doc. 1*. She requests that the court reverse the Commissioner's decision and award her benefits or, in the alternative, remand the case for further proceedings. *Id*. at 2 (Wherefore Clause).

---

[1] Because the facts of this case are well known to the parties, we do not repeat them here in detail. Instead, we recite only those facts that bear on Shellenberger's claims.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 8*. The Commissioner then filed a certified transcript of the administrative proceedings. *Doc. 9*. The parties filed briefs, *see docs. 11, 13, 14*, and this matter is ripe for decision.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*,

48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Shellenberger is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Title II or Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

Further, to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[2] Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017). Supplemental Security Income "is a federal income supplement

[2] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)). Here, the ALJ determined that Shellenberger met the insured-status requirements through December 31, 2025. *Admin. Tr.* at 17, 19.

program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id*.

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is '"that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, '"the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV. The ALJ's Decision.

On March 25, 2025, the ALJ denied Shellenberger's claims for benefits. *Admin. Tr.* at 14–38. He proceeded through the fourth step of the five-step sequential-evaluation process, and he made an alternative finding at the fifth step.

### A. Step One.

At step one of the sequential-evaluation process, the ALJ found that Shellenberger had not engaged in substantial gainful activity since her alleged onset date of July 20, 2020. *Id.* at 19.

### B. Step Two.

At step two of the sequential-evaluation process, the ALJ found that Shellenberger had numerous severe impairments, including migraine headaches. *Id*. at 20.[3] Because Shellenberger's claims before the court concern the ALJ's decision only with respect to her migraine headaches, we do not recount or address the ALJ's discussion at this step, or the other steps, except as it pertains to Shellenberger's migraine headaches.

[3] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to regulations as well as citations to the record.

**C. Step Three.**

At step three of the sequential-evaluation process, the ALJ found that Shellenberger did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 22–23. Specifically, with respect to Shellenberger's migraine headaches, the ALJ stated:

> [Shellenberger]'s history of obesity, fibromyalgia, diabetes mellitus, and migraine headaches do not meet any section of the listings, as there is no evidence indicating that these conditions have increased the severity of any of [Shellenberger]'s coexisting or related impairments to the extent that the combination of such impairments meets the requirements of a listing (SSRs 19-2p, 12-2p, and 19-4p).

*Id*.

**D. The RFC.**

The ALJ then determined that Shellenberger had the RFC to do light work[4] with some limitations. *Id*. at 23. He concluded that Shellenberger can frequently

[4] *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

balance; occasionally "climb ramps/stairs, stoop, kneel, crouch, and crawl"; and "never climb ladders, ropes, or scaffolds." *Id*. He also concluded that she must "avoid concentrated exposure to temperature extremes, humidity, loud noise, vibration, fumes, dust, gases, poor ventilation, dangerous machinery, and unprotected heights." *Id*.

In making this RFC assessment, the ALJ considered Shellenberger's testimony and assertions regarding her limitations. *Id*. He noted that Shellenberger alleges disability due to, among other conditions, migraine headaches, and that she testified that "[s]he has headaches three days per week and is prescribed oxycodone for headaches and pain, which she takes every four hours." *Id*.[5] The ALJ concluded that although Shellenberger's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. at 23–24.

---

[5] Shellenberger testified that she takes Oxycodone for her pain associated with her EGPA and her headaches. *Admin. Tr.* at 51–52. "Eosinophilic granulomatosis with polyangiitis (EGPA) is an extremely rare form of vasculitis, characterized by inflammation within small blood vessels." American Lung Association, https://www.lung.org/lung-health-diseases/lung-disease-lookup/egpa/about-epga#:~:text=by-,inflammation (last visited Sept. 28, 2026).

The ALJ also considered Shellenberger's medical records. *Id*. at 24–27. In addition to the medical records relevant to Shellenberger other impairments, the the ALJ noted that on October 20, 2023, Kelly Schultz, CRNP, performed a consultative physical examination, and Nurse Schultz noted that Shellenberger reported a history of "migraine headaches, varying in duration but can last up to six days and with weeks in between." *Id*. at 26.

The ALJ further considered the medical opinions in the record. *Id*. at 27–29. With the exception of Nurse Schultz noting, as set forth above, that Shellenberger reported a history of migraines, none of those opinions, as recounted by the ALJ, mention Shellenberger's migraines. *Id*. The ALJ found the opinions of the consultative examiners unpersuasive, and he found the opinions of the state agency consultants persuasive. *Id*. at 28–29.

The ALJ also considered statements by Shellenberger's mother, brother, and friend, finding these statements not persuasive because they "are not supported by her clinical history and overall improvement and are not consistent with [her] physical examination findings or her mental status examination findings[.]" *Id*. at 30. And the ALJ found that Shellenberger's allegations regarding the limiting effects of conditions are not supported by the record. *Id*. As to Shellenberger's migraines, the ALJ observed that her "migraine headaches were noted as controlled in November 2024." *Id*.

**E. Step Four.**

At step four of the sequential-evaluation process, the ALJ found that Shellenberger could perform her past relevant work as a drafter design technician . *Id.* at 31. The ALJ observed that that work is generally performed at the skilled, light exertional level, but Shellenberger actually performed that work at the skilled, sedentary exertional level. *Id*. And comparing Shellenberger's RFC "with the physical and mental demands of this work," the ALJ concluded that Shellenberger "is able to perform it as actually and generally performed." *Id*.

Because the ALJ concluded at step four that Shellenberger could perform her past relevant work, the ALJ did not need to address step five of the sequential-evaluation process. Nevertheless, he made an alterative finding at step five.

**F. Step Five.**

As an alternative finding, at step five of the sequential-evaluation process, considering Shellenberger's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as cashier II, small products assembler, and mail clerk—that exist in significant numbers in the national economy that Shellenberger could perform. *Id*. at 31–32.

In sum, the ALJ concluded that Shellenberger was not disabled from July 20, 2020 (which is the alleged onset date), through the date of the ALJ's decision

on March 25, 2025. *Id*. at 32. Thus, he denied Shellenberger's claims for benefits. *Id*.

**V. Discussion.**

Shellenberger sets forth one statement of error: "The ALJ failed to account for the 'total limiting effects' of [her] severe migraine headaches, failing, for instance, to discuss SSR19-4p, SSA's explicit policy for evaluating primary headache disorders." *Doc. 11* at 1. Although Shellenberger frames her claim as a single statement of error and she focuses on the ALJ's RFC assessment, she also mentions Step 3, and based on her briefing, we conclude that she is presenting two claims: (1) the ALJ erred at Step 3 with regard to her migraine headaches; and (2) the ALJ erred by failing to include additional limitations in her RFC based on her migraine headaches. We address each in turn.

Before we address Shellenberger's claims, we set forth what she contends the record shows regarding her migraines. Her summary of the evidence regarding her migraines includes three notations in gastroenterology records under Review of Systems sections of those records noting that Shellenberger reported headaches. *See Admin. Tr.* at 461 (September 2022); 1081 (October 2023); and 1483 (December 2024). Shellenberg also points to Nurse Schultz's report from a consultative examination in October 2023. In a section of that report regarding

Shellenberger's complaints, Nurse Shultz notes the following as to Shellenberger's reports regarding migraines:

> Migraines. They are throbbing. Frequency: There can be weeks in between them, but it does vary in duration, up to six days. Associated symptoms are nausea and photophobia. Triggers are unknown and treatment is hydrocodone and Zofran.

*Id*. at 943.

Shellenberger also points to a Pain Questionnaire that she completed on March 28, 2024, in which she states that "[m]ost days I have headaches & sinus pain (varies in intensity from moderate to severe). Every day I have severe pain in my joints. This is all a result from EGPA." *Id*. at 282. She reported that because of her pain, she does not go out, she does not socialize, and she can no longer cook, do laundry, shower, or bathe herself. *Id*. at 283. And when the pain is severe, she waits until is eases up before making "phone calls, etc otherwise [she] can't even talk." *Id*.

Shellenberger further points to a hospital record from June 6, 2024,[6] relating to her admission for appendicitis that notes that Shellenberger "reported feeling reasonably well overall though has a persistent headache/pain despite pain medications . . . ." *Id*. at 2128. She also points to her testimony at the hearing before the ALJ in February 2025, where after testifying about several other

[6] Shellenberger sets forth the date of this record as June 2025, *see doc. 11* at 7, but the record is actually from June 2024, *see Admin. Tr.* at 2128.

problems that cause her pain, Shellenberger testified as follows regarding her headaches:

> A . . . I get a lot of headaches as well so that's –
> Q How often do you have –
> A. That –
> Q --headaches?
> A I'd say about three days out of a week.
> Q And what do you have to do when you have a headache to relieve it?
> A So I take Oxycodone around the clock. I take one every four hours and that, you know, that's for my pain associated with this disease[7] and my headaches, but I do take like a – I take a B complex in addition to a multi vitamin to try to help ward off the headaches and I also – sometimes I will do – I have essential oil that I'll rub on my head and under my eyes and around my ears and stuff and then I'll take – I have several like eye packs that I'll microwave. I'll keep one in the freezer and another one out and I'll microwave one and put that – put heat on my face and on my head and then I'll alternate that with the one in the freezer. So I'll do hot/cold, hot/cold, hot/cold compresses quite a bit.

*Id*. at 51–52.

**A. Step 3 and Headaches.**

We begin by addressing Shellenberger's claim that the ALJ erred at step three of the sequential-evaluation process. Shellenberger suggests that the ALJ

---

[7] Shellenberger testified about several diseases before she testified about her headaches, but just before her testimony regarding her headaches, she testified about the pain caused by her EGPA. *Admin. Tr.* at 51. And in her earlier testimony, Shellenberger characterized her EGPA as her "main disease." *Id*. at 45. Thus, we construe Shellenberger's reference here to "this disease" as a reference to her EGPA.

failed to adequately address Listing 11.02 with regard to her headaches. For the reasons discussed below, we conclude that the ALJ did not err at step three, and even assuming that he erred, any such error was harmless as the evidence in the record does not support a finding that Shellenberger's headaches are equivalent to Listing 11.02. Before we address Straub's specific contentions, we set forth the standards applicable to the step-three analysis of headaches.

Appendix 1 of 20 C.F.R. Part 404, Subpart P ("Listing of Impairments") describes, for each major body system, impairments that the Commissioner considers to be severe enough to prevent a claimant from doing any gainful activity regardless of the claimant's age, education, or work experience. 20 C.F.R. § 404.1525(a). "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "[T]he medical criteria defining the listed impairments" is set "at a higher level of severity than the statutory standard." *Id*. at 532. "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id*. (italics in original). "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id*. If a claimant's impairment meets or is equivalent to a listed

impairment, then the claimant "is *per se* disabled and no further analysis is necessary." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). But "[i]f a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

"In step three, the ALJ must determine whether [the claimant's] impairment matches, or is equivalent to, one of the listed impairments." *Burnett*, 220 F.3d at 119. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (italics in original); *see also* 20 C.F.R. § 404.1525(c)(3) ("We will find that your impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement."); 20 C.F.R. § 404.1525(d) ("To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530 (footnote omitted). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for [a] listed impairment." *Id*. at 531 (italics in original) (footnote omitted); *see also* 20 C.F.R.

§ 404.1526(a) ("Your impairment(s) is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment."); 20 C.F.R. § 416.926(a) ("Your impairment(s) is medically equivalent to a listed impairment in appendix 1 of subpart P of part 404 of this chapter if it is at least equal in severity and duration to the criteria of any listed impairment.").

The Third Circuit "requires the ALJ to set forth the reasons for his decision" at step three. *Burnett*, 220 F.3d at 119. The purpose of this requirement "is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 120). "Conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). This is because a bare conclusion that an impairment does not meet or equal a listing '"is beyond meaningful judicial review.'" *Burnett*, 220 F.3d at 119 (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). But the ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505. And the ALJ's decision must be "read as a whole[.]" *Id.*

There is no listing for migraine headaches. *See Soc. Sec. Ruling 19-4p, Titles II & XVI: Evaluating Cases Involving Primary Headache Disorders*, 2019 WL

4169635 (S.S.A. Aug. 26, 2019) ("SSR 19-4p") ("Primary headache disorder is not a listed impairment in the Listing of Impairments (listings)."). But "SSR 19-4p explains how primary headache disorders, like migraines, are evaluated at step three." *Tyson v. Kijakazi*, 1:21-CV-855, 2022 WL 3975002, at *10 (M.D. Pa. July 25, 2022), *report and recommendation adopted*, 2022 WL 3971041 (M.D. Pa. Aug. 31, 2022)). SSR 19-4p provides that "a primary headache disorder, alone or in combination with another impairment(s)" may "medically equal[] a listing." *SSR 19-4p*, 2019 WL 4169635 at *7. And it identifies Listing 11.02, which addresses epilepsy, as "the most closely analogous listed impairment" for a primary headache disorder. *Id*. More specifically, SSR 19-p4 provides that "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) [medically determinable impairment(s)] medically equals the listing." *Id.* "Thus, an ALJ should look to Listings 11.02B and 11.02D in assessing whether a claimant's migraine headache impairment medically equals a listing." *Tyson*, 2022 WL 3975002 at *10.

"Listing 11.02B describes dyscognitive seizures 'occurring at least once a week for at least 3 consecutive months . . . despite adherence to prescribed treatment.'" *Falardo-Weller v. Kijakazi*, NO. 3:22- CV-01026, 2023 WL 6119101, *6 (M.D. Pa. Sept. 18, 2023) (quoting 20 C.F.R. Part 404, Subpart P, App.1,

§ 11.02B). "To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B," the ALJ should consider the following factors:

> [(1)] A detailed description from an AMS [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); [(2)] the frequency of headache events; [(3)] adherence to prescribed treatment; [(4)] side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and [(5)] limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4P, 2019 WL 4169635 at *7.

Listing 11.02D, on the other hand, "requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one" of the following areas: "[p]hysical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." *Id.* In evaluating 11.02D, the ALJ should consider the same factors—set forth above—for considering 11.02B. *Id.*

The ALJ's step three analysis regarding Shellenberger's migraine headaches is brief. It reads in full:

> [Shellenberger]'s history of obesity, fibromyalgia, diabetes mellitus, and migraine headaches do not meet any section of the listings, as there is no evidence indicating that these conditions have increased the severity of any of [Shellenberger]'s coexisting or related impairments to the extent that the combination of such impairments meets the requirements of a listing (SSRs 19-2p, 12-2p, and 19-4p).

*Admin. Tr.* at 22–23. Although the ALJ mentions SSR 19-4p, he does not address the requirements of Listing 11.02B or 11.02D or the factors set forth in SSR 19-4p. The ALJ's analysis is cursory.

The Commissioner contends that the ALJ's discussion was sufficient because he addressed the medical and other evidence relating to Shellenberger's headaches in connection with his RFC assessment. We agree with the Commissioner that we must look to the ALJ's decision as a whole, and consistent with the principle that the ALJ's decision must be read as a whole, "where an ALJ's conclusion at step three is not adequately articulated, courts may review the ALJ's entire decision before determining whether remand is required." *Izalia V. v. O'Malley*, No. 4:22-CV-1819, 2024 WL 4505469, at *5 (M.D. Pa. Oct. 16, 2024). "In other words, 'the Court must determine whether the evidentiary discussion—regardless of its placement in the ALJ's decision—supports meaningful judicial review of the challenged Step Three finding(s) pursuant to the applicable legal

standards." *Fewell v. O'Malley*, No. 1:23-CV-00865, 2024 WL 4182115, at *4 (M.D. Pa. Aug. 19, 2024) (quoting *Gonzalez v. Saul*, No. 1:17-CV-02524 (PAZ), 2019 WL 13401378, at *12 (D.N.J. Oct. 31, 2019)), *report and recommendation adopted*, 2024 WL 4173790 (M.D. Pa. Sept. 12, 2024). In this vein, the Social Security Administration issued a Social Security Ruling which, among other things, sets forth articulation requirements for step 3 findings about medical equivalence. Soc. Sec. Ruling 17-2p, *Titles II & XVI: Evidence Needed by Adjudicators at the Hearings & Appeals Council Levels of the Admin. Rev. Process to Make Findings About Med. Equivalence*, 2017 WL 3928306 (S.S.A. Mar. 27, 2017) ("SSR 17-2p"). SSR 17-2p provides that if an ALJ "believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the [ALJ] is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." *Id*. at *4. Rather, "[g]enerally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." *Id*. And "[a]n ALJ's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." *Id*. "Nonetheless, for an

unarticulated medical equivalency finding to be upheld[,] an ALJ's decision as a whole 'must still enable this court to follow the ALJ's reasoning in determining that Plaintiff's impairment is not the medical equivalent of the listing' Plaintiff alleges on appeal" and "[i]f it does not, remand is required." *Izalia V.* 2024 WL 4505469, at *5.

Here, in connection with his RFC assessment, the ALJ noted that Shellenberger testified that "[s]he has headaches three days per week and is prescribed oxycodone for headaches and pain, which she takes every four hours." *Id*. at 23. But the ALJ concluded that Shellenberger's "statements about the intensity, persistence, and limiting effects of [her] symptoms . . . are inconsistent with [her] treatment notes of record." *Id*. at 24. In addition to the medical records relevant to Shellenberger other impairments, the ALJ noted that on October 20, 2023, Nurse Schultz performed a consultative physical examination, and she noted that Shellenberger reported a history of "migraine headaches, varying in duration but can last up to six days and with weeks in between." *Id*. at 26. Finally, as to Shellenberger's migraines, the ALJ observed that her "migraine headaches were noted as controlled in November 2024." *Id*.

Reading the ALJ's decision as a whole, we conclude that the ALJ's step three analysis is not beyond meaningful judicial review. The ALJ concluded that Shellenberger had improved and that her migraine headaches were under control.

And he rejected Shellenberger's contentions regarding the intensity, persistence and limiting effects of her headaches. Given the thin evidence regarding the limiting effects of Shellenberger's headaches, which consists of her reports of her symptoms, and the notation that her migraine headaches were noted as controlled, we can not say the ALJ's step three analysis is not supported by substantial evidence.

Even assuming for the sake of argument that the ALJ erred at step 3, the question then is whether the ALJ's error was harmless. "Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). Thus, a claimant must explain '"how the . . . error to which he points could have made any difference.'" *Id.* (quoting *Shinseki v. Sanders,* 556 U.S. 396, 413 (2009)). "An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Although an error may be harmless, we must be mindful that "'[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.'" *Fargnoli*, 247 F.3d at 44 n.7 (quoting *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

Shellenberger has not pointed to evidence that arguably equals the requirements of Listing 11.02B or 11.02D. Accordingly, any error by the ALJ at Step 3 was harmless.

**B. The RFC.**

Shellenberger contends that given that she has headaches three times per week and because severe headaches can cause her "to absent herself from all activities for anywhere between several hours and six days," the ALJ erred by failing to include additional restrictions in her RFC, specifically an "off-task" limitation. *Doc. 11* at 12–13.

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The RFC is '"that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1). In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121. "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer*, 186 F.3d at 429 (quoting *Mason*, 994 F.2d at 1066). The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential,

and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

Further, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz*, 577 F.3d at 505. In fact, in evaluating the medical opinion evidence of record, "the ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter,* 642 F.2d at 705.

SSR 19-4p provides that when considering a primary headache disorder in assessing a person's RFC, the ALJ "consider[s] the extent to which the person's impairment-related symptoms are consistent with the evidence in the record." *SSR 19-4p*, 2019 WL 4169635 at *8. "For example, symptoms of a primary headache disorder, such as photophobia, may cause a person to have difficulty sustaining attention and concentration." *Id*. "Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC." *Id*.

Here, as discussed above, the ALJ noted in connection with his RFC assessment that Shellenberger testified that "[s]he has headaches three days per week and is prescribed oxycodone for headaches and pain, which she takes every four hours." *Id*. at 23. But the ALJ concluded that Shellenberger's "statements about the intensity, persistence, and limiting effects of [her] symptoms . . . are inconsistent with [her] treatment notes of record." *Id*. at 24. And he observed that her "migraine headaches were noted as controlled in November 2024." *Id*.

Reading the ALJ's decision as a whole, the ALJ concluded that Shellenberger had improved and that her migraine headaches were under control. And he rejected Shellenberger's contentions regarding the intensity, persistence and limiting effects of her headaches. Further, Shellenberger has not pointed to any medical opinions that conclude that she had additional restrictions because of her migraine headaches. And the ALJ adopted the state agency consultant's opinions that are consistent with the ALJ's finding that Shellenberger has the RFC for light work with some limitations. *Id*. at 28–29. Although a different factfinder may have weighed the evidence differently, we cannot say the ALJ's RFC assessment is not supported by substantial evidence.

**VI. Conclusion.**

For the foregoing reasons, we will affirm the decision of the Commissioner. An appropriate order follows.

***S/Susan E. Schwab***
Susan E. Schwab
United States Magistrate Judge